# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LIQUI-BOX CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 1:19-cv-04069 |
| ) | |
| SCHOLLE IPN CORPORATION, ) | Chief Judge Rebecca R. Pallmeyer |
| SCHOLLE IPN PACKAGING, INC., ) | |
| and KEVIN BERGENTHUN ) | |
| ) | **JURY TRIAL DEMANDED** |
| Defendants. ) | |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S DEFECTIVE CLAIMS ON PATENT INFRINGEMENT (COUNT 1) AND CIVIL CONSPIRACY (COUNT 9)

## INTRODUCTION

In **January of 2016,** Defendant Kevin Bergenthun ("Bergenthun") resigned his position at Plaintiff Liqui-Box Corporation ("Liqui-Box"), notably, without lining up a "next job." (Dkt. No. 24, ¶ 36.) On **July 7, 2016**, Defendant Scholle IPN Packaging, Inc. hired Mr. Bergenthun as a Regional Commercial Director.[1] Just days later, on July 12, 2016, Liqui-Box sent a letter to Defendants Scholle IPN Corporation and Scholle IPN Packaging, Inc. (collectively, "Scholle") regarding Scholle's hiring of Bergunthun, to which Scholle's general counsel swiftly responded and provided assurances. (*Id.*, ¶¶ 47-48.) Liqui-Box did not file a lawsuit in 2016, in 2017, or in 2018. It filed this lawsuit in **July 2019** over Bergunthun's resignation 3½ years earlier—and added a patent claim, almost as an afterthought, to make it appear as though its weak and untimely claims should somehow be taken seriously.[2]

However, Count 1, alleging infringement of U.S. Patent No. 7,628,299 ("the '299 Patent") is defective under *Iqbal/Twombly*, because Liqui-Box failed to allege how the Scholle IPN Versi fitment ("the Accused Product") fulfills the specific claim limitation that Liqui-Box expressly added to the claims—to overcome the prior art, thus enabling Liqui-Box to receive a Notice of Allowance, towards issuance as a patent. As a result, Liqui-Box has failed to allege any plausible facts supporting the claim that the Accused Product somehow infringes the '299 Patent.

Likewise, Liqui-Box has pleaded itself out of court on its civil conspiracy claim of Count 9, in which it expressly alleges (and correctly, factually acknowledges) that Bergunthun is an

---

[1] Contrary to Liqui-Box's speculative assertion that, "[p]rior to Bergenthun's hire [and without Bergenthun's help], Scholle had been unable to develop a fitment allowing for connection with a variety of beverage bag connectors that could compete with Liqui-Box's DET fitment," Scholle filed its own patent application (which Liqui-Box expressly cites to in its FAC (*see* Dkt. No. 24, ¶ 71)) covering the Accused Product nearly **two years <u>before</u>** hiring Mr. Bergenthun, while Bergenthun was still a Liqui-Box employee. (*Id.*, ¶ 50.) It is quite implausible, then, for Mr. Bergenthun to have been "directly involved in helping Scholle design" and "develop" the Accused Product—when Scholle itself invented it long before Mr. Bergenthun joined Scholle. (*Id.*, ¶ 54.)

[2] Liqui-Box has recently amended its Complaint to assert a second afterthought claim: a false advertising claim that is predicated on Liqui-Box's deliberate misreading of an old Scholle advertisement. (Dkt. No. 24, ¶¶ 120–136.)

1

employee of Scholle. (Dkt. No. 24, ¶ 10.) Black letter law holds that employees and their employers constitute a single actor under the intra-corporate conspiracy doctrine, and do <u>not</u> and <u>cannot</u> constitute the "two or more persons" required to plead a civil conspiracy claim. Count 9 may also be dismissed as being duplicative of other claims. Accordingly, Scholle hereby respectfully moves the Court, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Liqui-Box's unsupported claims for patent infringement under Count 1 and for civil conspiracy under Count 9.

I. **THE '299 PATENT AND PLAINTIFF'S PATENT INFRINGEMENT CLAIM**

Count 1 of Plaintiff's First Amended Complaint (FAC) alleges that Scholle's Versi fitment purportedly infringes "at least claim 1 of [Liqui-Box's] '299 Patent." (Dkt. No. 24, ¶ 73.) The '299 Patent is directed to a simple "threaded spout" that connects to a corresponding "dispensing connector." (Dkt. No. 24-1 at 1, '299 Patent at Title and Abstract.) Notably, each and every claim of the '299 Patent explicitly requires, among other limitations, this spout to include "a threaded portion which comprises **two opposing threads <u>of equal geometries</u>**." (*Id.* at 10, '299 Patent at 5:15-16 (emphasis added).) Any plausible claim of alleged infringement of the '299 Patent must therefore be supported by plausible factual contentions that the Accused Product includes the required "**two opposing threads of equal geometries**."

This is particularly true here because Liqui-Box specifically narrowed the "**two opposing threads**" element of all its claims to add the limitation "**of equal geometries**" during the prosecution of the '299 Patent, because it had to—in order to overcome a cited prior art reference. Specifically, in a response Liqui-Box filed on May 19, 2009, Liqui-Box argued that a prior art patent did **not** anticipate claim 1—the same claim 1 asserted by Liqui-Box in its FAC—because, unlike Liqui-Box's invention, as described in the newly amended claim, the prior art reference did not meet the "of equal geometries" requirement. Liqui-Box's amended claim, which now included the "two opposing threads of equal geometries" language and its accompanying argument over the

prior art reference, directly resulted in the United States Patent and Trademark Office's issuance of a Notice of Allowance on July 30, 2009. There can be no question that the "two opposing threads **of equal geometries**" limitation is crucial to the allowed, claimed invention of the '299 patent, and absolutely no product can infringe those claims without that limitation.[3]

Plaintiff's counsel, being in possession of Scholle's Versi fitment, was completely aware that the Accused Product, in fact, has two threadforms of completely <u>different</u> geometries. In support of its patent infringement claim, Plaintiff even cites to Scholle's own U.S. Patent Application (U.S. Appl. No. 14/327,820), which covers the invention of the Accused Product and which is directed to, and which expressly features (in support of Scholle's own corresponding patent) a threaded spout assembly having two threadforms of **different lengths**—a detail that can be clearly seen in the Accused Product and that is repeated over and over in the abstract, drawings, specification, and claims of Scholle's patent application (and eventual patent, U.S. Pat. No. 9,511,907 ("the Scholle Patent")). (Dkt. No. 24, ¶ 71.) Specifically, claim 1 of the Scholle Patent, which covers the Accused Product, recites, in part, the following:

> A spout assembly for a flexible bag comprising:
> …
> a dual lead thread extending along the outer surface of the body between the proximal end and the distal end, the dual lead thread having a first threadform and a second threadform, the first threadform having a first threadform length, and the second threadform having a second threadform length, **the length of the first threadform being <u>different</u> than that of the second threadform**.

---

[3] Although the FAC states that the Accused Product "has, either literally <u>or by equivalents</u>, two opposing threads of equal geometries," (Dkt No. 24, ¶ 23 (emphasis added)), Plaintiff is estopped from invoking the doctrine of equivalents with respect to the "of equal geometries" limitation. During the prosecution of the '299 Patent, Liqui-Box narrowed claim 1 by amending the claim *to add* the "of equal geometries" limitation to overcome the cited prior art reference, and distinguished over that prior art reference by arguing that the prior art's analogous threads were **not** of equal geometries. Under the doctrine of prosecution history estoppel, Plaintiff is thus unable to assert infringement "by equivalents" with respect to the "**of equal geometries**" limitation. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 733-34 (2002) (holding that patent prosecution estoppel may bar assertions of infringement against equivalents).

3

By citing to Scholle's patent application to allege Scholle's purported "notice and knowledge of the '299 Patent," Liqui-Box acknowledges in its own pleadings that Scholle's patent application covers the Accused Product, because notice of patent infringement requires a notification *that an accused product infringes a claim* of the patent—"not merely notice of the patent's existence." *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994). Based solely on Liqui-Box's own pleadings, in addition to a visual analysis that Liqui-Box is presumed to have undertaken as part of its pre-filing obligations, the only logical conclusion that can be drawn is that Liqui-Box had full knowledge that the Accused Product has threadforms that are anything but "of equal geometries"—but nevertheless charged Scholle with patent infringement.

Perhaps this is why Liqui-Box chose to place the reference character "[C]" in its claim chart ***just before*** the terminology "of equal geometries" of claim 1, and not <u>after</u> it—because Liqui-Box could not, and indeed cannot, plead *any* plausible facts pointing to a feature Liqui-Box knows simply does not exist in the Accused Product. (*Id.,* ¶ 23.) In so doing, Liqui-Box's FAC pleadings identify "two opposing threads"—while carefully avoiding the identification of the "**equal geometries**" that must define those two opposing threads. As such, Liqui-Box's pleading carefully, indeed clearly, **<u>avoids</u>** identifying the purportedly infringing subject matter.

4

| | |
|---|---|
| (a) a threaded portion which comprises two opposing threads [C] of equal geometries for mating with an internal surface of the collar of the dispensing connector, wherein the opposing threads are spaced from each other on the external surface to provide a lead-in to the internal surface of the collar of the dispensing connector and the opposing threads extend from and form part of an upper external flange [D] located on the external surface of the spout, and [?] | The Infringing Fitment has, either literally or by equivalents, two opposing threads of equal geometries for mating with an internal surface of the collar of the dispensing connect as shown below: |

Plaintiff's FAC, Dkt. No. 24, ¶ 23.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a Complaint that fails to state a claim upon which relief can be granted, as here, should be dismissed. *See OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015); *see also Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014).

To survive a motion to dismiss under the *Twombly/Iqbal* standard, a complaint must set forth "sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). This showing requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," instead, a plaintiff must provide a sufficient factual basis "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also id.* at 679 ("[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"); *accord Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions"). Indeed, "when the allegations in a complaint, however true, could not raise a claim of entitlement

5

to relief, this basic deficiency should…be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 557 (quotations omitted).

In deciding a motion to dismiss, a court may consider documents that "are referred to in the plaintiff's complaint and are central to his claim." *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). While a "plaintiff is under no obligation to attach to her complaint documents upon which her action is based…a defendant may introduce certain pertinent documents if the plaintiff failed to do so." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) (citation omitted). Indeed, last month, the Federal Circuit confirmed this very principle where it upheld a district court's decision to grant a 12(b)(6) motion, dismissing a patent infringement action. In that decision, the Federal Circuit itself held that prosecution history estoppel is an **issue of law** that can be appropriately decided by a district court upon motion under Rule 12(b)(6). *See Amgen Inc. v. Coherus BioSciences Inc.*, 931 F.3d 1154, 1159 (Fed. Cir. 2019). At the district court there, the defendant provided numerous facts from the prosecution history to demonstrate the plaintiff's failure to state a claim of patent infringement—which the court stated comprised "sufficient context…to make a decision of law that prosecution history estoppel applies." *Amgen Inc. v. Coherus BioSciences Inc.*, 2018 WL 1517689 at *4 (D. Del. Mar. 26, 2018). Clearly, Plaintiff's own actions resulted in prosecution history estoppel, and the mere consideration of "facts" relating to that issue of law is not enough to convert Defendant's present motion into one that should be considered under Fed. R. Civ. P. 56. The *Amgen* case holds that the Court's consideration of the effect of Plaintiff's addition of the terminology "of equal geometries" is an issue of law that can be decided on a motion to dismiss. Notably, the prosecution history estoppel is only relevant here to the ***futility*** of Plaintiff amending its Complaint to **fully and sufficiently** re-allege infringement by the Accused Product, but the Court need not consider

6

prosecution history estoppel for the central thrust of this motion: the patent requires "two opposing threads of equal geometries," and Plaintiff has failed to plausibly allege facts showing that the Accused Product could possibly meet the "of equal geometries" limitation.

### III. PLAINTIFF'S PATENT INFRINGEMENT CAUSE OF ACTION FAILS UNDER *TWOMBLY* AND *IQBAL*

To establish literal infringement of a patent claim, a plaintiff must show that "every limitation set forth in a claim [is] found in the accused product exactly." *Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1319 (Fed. Cir. 2015) (quoting *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995)). If a plaintiff cannot show that literal infringement has occurred, a plaintiff may attempt to establish infringement under the doctrine of equivalents by showing that the accused product contains "an equivalent for each limitation not literally satisfied." *Wi-Lan, Inc. v. Apple, Inc.*, 811 F.3d 455, 463 (Fed. Cir. 2016). Accordingly, applying the *Twombly/Iqbal* standard, a plaintiff must plead that <u>every</u> limitation (or an equivalent thereof)[4] in the asserted claim can plausibly be found in the accused product. *See, e.g., Atlas IP, LLC v. City of Naperville*, Case No. 15-C-10744, 2016 WL 3907029 (N.D. Ill. July 19, 2016). This requirement extends from the *Twombly/Iqbal* standard to the burden of proof in patent infringement cases "because 'the failure to meet a single limitation is sufficient to negate infringement of [a] claim.'" *e.Digital Corp. v. iBaby Labs, Inc.*, 2016 WL 4427209, at *3 (N.D. Cal. Aug. 22, 2016) (quoting *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991)); *see also AMS, LLC v. Muzzy, LLC*, Case No. 18-cv-583-wmc (W.D. Wis. Mar. 29, 2019) (dismissing patent infringement suit where a claim element was "conspicuously absent" from the complaint); *accord Palmer Hamilton, LLC v. AmTab Mfg. Corp.*, 2016 WL 6775458 (W.D. Wis. Nov. 15, 2016).

---

[4] For the reasons explained in note 3, *supra*, "equivalents" do not apply and cannot suffice here.

There can be no dispute that all of the claims of the '299 Patent are directed to a spout that must have not only two opposing threads, but rather "a threaded portion which comprises two opposing threads **of equal geometries**." (Dkt. No. 24-1, '299 Patent at 5:15-16 (emphasis added); 35 U.S.C. § 112(d) ("A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers"); *see also Pave Tech, Inc. v. Snap Edge Corp.*, 952 F. Supp. 1284, 1295 (N.D. Ill. 1997)). In spite of this requirement, the FAC lacks any plausible factual allegation and accompanying identification that the Accused Product includes "a threaded portion which comprises two opposing threads *of equal geometries*." Rather, Plaintiff has merely alleged that element "[C]"—which immediately follows "(a) a threaded portion which comprises two opposing threads" and no more—is embodied in the Accused Product. (Dkt. No. 24, ¶ 23.) In other words, Plaintiff has only plausibly alleged that the Accused Product has "a threaded portion which comprises two opposing threads." Plaintiff could neither plausibly allege, nor identify, that those threads are "*of equal geometries*"—and for good reason. There are no such "equal geometry" threads in the Accused Product.

The *Atlas IP* case presented a highly similar issue. There, the court summarily dismissed the plaintiff's patent infringement claim under Rule 12(b)(6) for providing only a conclusory allegation that a "powering off" limitation in the asserted patent claim was met by the accused product because the complaint there alleged "a smart meter has the ability to power off," even though the whole claim limitation recited "powering off…**by using the cycle establishing information transmitted from the hub**." *Atlas IP*, 2016 WL 3907029 at *1 (emphasis added). The court found the plaintiff's failure to link "the other part of the 'powering off' claim limitation to the accused product" was fatal—the allegation was "far too conclusory to survive a dismissal under *Twombly/Iqbal*." *Id.* at *3. The same exact situation exists here, as Plaintiff has knowingly

8

and intentionally failed to plead "the other part of the [two opposing threads] limitation"—the part about those threads being "of equal geometries"— because it knows it cannot meet that limitation.

Unsurprisingly, Plaintiff appears to have made no attempt at providing clear photographs of the accused product to enable a meaningful comparison between the "geometries" of what Liqui-Box claims are "two opposing threads" in Accused Product. Rather, most of the photographs of the Accused Product either partially obscure element [C], or are shown from a perspective that limits a comparison of the geometries of element [C]. In addition, Plaintiff makes no representation in its FAC that it has conducted even a basic analysis of the Accused Product to determine whether or not it possesses two opposing threads **of equal geometries**.[5] Thus, Plaintiff's only possible contention that the Accused Product possesses "two opposing threads of equal geometries" is in the following unsupported allegation:

> "The Infringing Fitment has, either literally or by equivalents, two opposing threads of equal geometries for mating with an internal surface of the collar of the dispensing connect [sic]."

*Id.* at 23. But Plaintiff carefully omitted the "of equal geometries" part of the "two opposing threads" limitation from its claim chart, and did not plead even a single specific fact in its FAC to support its contention that the Accused Product somehow has opposing threads *of equal geometries*. A legal conclusion with no factual basis cannot possibly meet the *Twombly/Iqbal* pleading standard. At a minimum, Plaintiff must plead "enough details about the subject-matter of the case to present a story that holds together." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Plaintiff Liqui-Box fails to meet this standard, and its patent infringement claim should therefore be dismissed, with prejudice.

---

[5] As suggested hereinabove, one would expect Plaintiff to have conducted such an analysis as a part of its Rule 11 pre-suit investigation obligations. *See* Fed. R. Civ. P. 11; *see also Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1073-74 (Fed. Cir. 2002) ("counsel must make a reasonable effort to determine whether the accused device satisfies ***each of the claim limitations***.").

## IV. PLAINTIFF'S CIVIL CONSPIRACY CAUSE OF ACTION ALSO FAILS UNDER *TWOMBLY* AND *IQBAL*

Plaintiff has also attempted to assert a civil conspiracy claim in Count 9, alleging that Bergenthun and Scholle "conspired" to commit the alleged patent infringement, trade secret misappropriation, breach of contract, and tortious interference claims. (Dkt. No. 24, ¶ 140.) While such a story makes for good theater, Plaintiff has nonetheless failed to state a claim for at least two reasons: (1) Plaintiff has admitted that Mr. Bergenthun is a Scholle employee, and an employee cannot conspire with his employer under the intra-corporate conspiracy doctrine; and (2) Plaintiff has already pleaded the underlying torts as separate causes of action, rendering the civil conspiracy claim duplicative at ¶¶ 68–103 and 110–119 of the FAC.

### A. There Can Be No Conspiracy Between an Employer and its Employee Under the Intra-Corporate Conspiracy Doctrine.

"Under Illinois tort law, a civil conspiracy requires '(1) an agreement between **two or more persons** for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff.'" *Turner v. Hirschbach Motor Lines*, 854 F.3d 926, 930 (7th Cir. 2017) (citation omitted) (emphasis added). Under the intra-corporate conspiracy doctrine, a corporation and its employee simply cannot conspire with each other—because a corporation and its employees are considered to constitute a single legal actor. *See Van Winkle v. Owens-Corning Fiberglas Corp.*, 291 Ill. App. 3d 165, 173, 683 N.E.2d 985, 991 (1997); *see also Buckner v. Atl. Plant Maint., Inc.*, 182 Ill. 2d 12, 24, 694 N.E.2d 565, 571 (1998) ("because the acts of an agent are considered in law to be the acts of the principal, there can be no conspiracy between a principal and an agent").

It is undisputed that Bergenthun is, and at all times relevant hereto, has been, an employee of Scholle. (Dkt. No. 24, ¶ 10 ("Defendant Bergenthun…is currently employed by Scholle").)

10

Even assuming that the remaining allegations are true, Plaintiff's civil conspiracy claim is defective on its face, because Bergenthun and Scholle constitute a single actor.

Defendants acknowledge that an exception to the intra-corporate conspiracy doctrine may apply when an agent acts outside the scope of his employment for his own benefit, and not for the benefit of the employer. *See, e.g., Bilut v. Northwestern Univ.*, 296 Ill. App. 3d 42, 49, 692 N.E.2d 1327, 1332 (1998). But, Plaintiff's FAC lacks any allegation whatsoever that Bergenthun acted outside the scope of his employment for his own benefit. Count 9 instead alleges the opposite: that Scholle "[induced] and aid[ed]" Mr. Bergenthun to divulge his "knowledge of Liqui-Box's patented technology"[6] and "Liqui-Box's confidential information and trade secrets"—specifically "**for the benefit of Scholle**." (Dkt. No. 24, ¶ 140(a), (b) (emphasis added).) Further, Plaintiff also accuses Bergenthun of "[i]nducing Scholle to tortiously interfere with Bergenthun's Non-Disclosure Agreement with Liqui-Box"—notably without any allegation that the purported inducement occurred outside the scope of Mr. Bergenthun's employment by Scholle. (*Id.* at ¶ 140(c).) Finally, Plaintiff alleges that "Bergenthun and the Scholle Defendants…[induced] and allow[ed] [all of the] Defendants to tortiously interfere with Liqui-Box's contracts and prospective economic relationships with its customers,"[7] presumably, as part of Bergenthun's job as a Scholle employee. (*Id.* at ¶ 140(d).) Even taking all of Plaintiff's allegations as true, the exception to the intra-corporate conspiracy doctrine cannot apply; Plaintiff's civil conspiracy claim of Count 9 is fatally deficient.

---

[6] A patent is a public record, and the '299 Patent issued nearly a decade ago on December 8, 2009, so it is unclear how the disclosure of publicly-available information could even be considered unlawful.

[7] Plaintiff's allegation at ¶ 140 (d) of the FAC admits that the acts of Mr. Bergenthun are practically inseparable from the acts of Scholle, stating that "Bergenthun **and** the Scholle Defendants acted *in combination*" to "[induce] and allow[] **Defendants** to tortiously interfere with Liqui-Box's contracts and prospective economic relationships with its customers."

11

Thus, Plaintiff's civil conspiracy claim must fail, for at least the reason that an employer and its employee acting within the scope of its employment simply cannot conspire with each other.

### B. Plaintiff's Civil Conspiracy Claim is Duplicative of the Other Causes of Action in Plaintiff's Complaint.

Plaintiff's civil conspiracy claim also fails because it is duplicative of the underlying claims upon which it is based. "The civil conspiracy theory has the effect of extending liability for a tortious act beyond the active tortfeasor to individuals who have not acted but have only planned, assisted, or encouraged the act." *McClure*, 188 Ill. 2d at 133. More particularly, "because a successful conspiracy claim enables a plaintiff to hold co-conspirators jointly liable for actions by other members of the conspiracy, a conspiracy claim is only actionable if it is based on new facts or seeks to extend liability for the underlying tort to new defendants." *Doctor's Data, Inc. v. Barrett*, 170 F. Supp. 3d 1087, 1159 (N.D. Ill. 2016).

Here, Plaintiff fails to allege any new facts beyond those already alleged in the underlying tort claims. It does not seek to extend liability to additional defendants beyond Bergenthun and Scholle. At most, Plaintiff is attempting to extend liability for its fourth cause of action— Bergenthun's alleged breach of contract—to Scholle, by claiming that Bergenthun "[induced] Scholle to tortiously interfere with Mr. Bergenthun's Non-Disclosure Agreement with Liqui-Box." (Dkt. No. 24, ¶ 140(c).) Even then, Plaintiff's claim fails because it implausibly alleges that Bergenthun induced his employer to interfere with his own contract, which is superfluous in the face of the direct accusations of active wrongdoing. Further, breach of contract is not a tort, and thus, an agreement to breach a contract is not a tortious act. *See Adcock*, 164 Ill.2d at 62–63; *see also Snap-On Inc. v. Ortiz*, 1999 WL 754819 (N.D. Ill. Sep. 14, 1999) (holding that a conspiracy to breach a contract is not a cause of action because "mere breach of contract is not a tort").

Accordingly, Plaintiff's civil conspiracy claim also fails because the civil conspiracy claim is duplicative, and does not extend liability or request relief beyond that already claimed in Plaintiff's other causes of action.

## V. **CONCLUSION**

Plaintiff's FAC fails dismally in attempting to meet the *Twombly* and *Iqbal* pleading standards, as it not only fails to plausibly allege that the Accused Product has "two opposing threads **of equal geometries**," but also surreptitiously omits the "of equal geometries" limitation from its analysis, its identification, and its factual allegations altogether. Absent relevant factual allegations that show that the Accused Product meets *each and every* limitation of claim 1 of the '299 Patent, the patent infringement claim must be dismissed. Moreover, no facts exist, nor could facts be pleaded in good faith, to establish that the Accused Product actually meets the "of equal geometries" limitation, and thus any attempt to re-plead the patent infringement claim by Liqui-Box would be futile. This is particularly true because Scholle's patent application (to which Plaintiff refers in the FAC), as well as the Scholle Patent covering the Accused Product that issued therefrom, repeatedly and expressly confirms that the Accused Product utilizes thread geometries that are *unequal*—the geometries are of different lengths.

Additionally, the FAC readily admits that Bergenthun is a Scholle employee, but pleads no facts to allege that Mr. Bergenthun somehow acted outside of the scope of his employment—all while improperly attempting to provide duplicative relief for underlying torts that have already been asserted. Thus, the conspiracy claim likewise cannot survive, and any attempt to re-plead that claim would likewise be futile—because the law is clear that employees cannot "conspire" with their employers.

13

WHEREFORE, for at least the reasons set forth herein, Defendants respectfully move the Court to dismiss Plaintiff's Count 1 on patent infringement, and to dismiss Plaintiff's Count 9 on civil conspiracy, <u>with</u> <u>prejudice</u>.

Dated: August 23, 2019

Respectfully submitted,

By: */s/ Richard D. Harris*

Richard D. Harris (IL ARDC No. 1137913)
Barry R. Horwitz (IL ARDC No. 6296764)
Jordan T. One (IL ARDC No. 6328591)
Greenberg Traurig LLP
77 W. Wacker Drive
Chicago, Illinois 60601
Tel: 312.456.8400
Fax: 312.456.8435
*harrisr@gtlaw.com*
*horwitzb@gtlaw.com*
*onej@gtlaw.com*

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

  I certify that, on August 23, 2019, a true and correct copy of the above and foregoing has been served on all counsel of record through the Court's electronic filing system.

                */s/ Richard D. Harris*
                Richard D. Harris