UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LIQUI-BOX CORP., | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 19 cv 4069 |
| SCHOLLE IPN CORP., SCHOLLE IPN PACKAGING, INC., and KEVIN BERGENTHUN, | ) Judge Rebecca R. Pallmeyer ) ) ) |
| Defendants. | ) ) |

# MEMORANDUM ORDER AND OPINION

In 2016, Defendant Kevin Bergenthun left his longtime employment with Plaintiff Liqui-Box Corporation where he had worked in research and development and sales. Later that same year, Bergenthun began working for Defendants Scholle IPN Corporation and Scholle IPN Packaging, Inc. (collectively "Scholle Defendants"), competitors of Plaintiff's, and allegedly began to use confidential information related to Liqui-Box's patents to develop a competing product. Bergenthun also allegedly began to contact Liqui-Box's customers to solicit their business for Scholle in a way that Plaintiff alleges interfered with its contracts and customer relationships. Relevant here, Plaintiff alleges that the Scholle Defendants infringed one of its patents (Count I), and that all Defendants conspired to commit various tortious acts (Count IX). Defendants jointly move to dismiss the patent infringement and civil conspiracy counts of Plaintiff's amended complaint for failure to state a claim [27]. For the following reasons, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiff Liqui-Box designs, develops, and manufactures bag-in-box and flexible liquid packaging for use in the beverage industry. (Am. Compl. [24] ¶¶ 15, 18.) One of Liqui-Box's

1

products is a bag or pouch fitted with a spout, called a fitment,[1] that is sold to beverage producers to hold and dispense liquids. (*Id.* ¶ 16.) Of those fitment products, one of Liqui-Box's most popular is the DET fitment, which has near-universal compatibility with the various connectors used by the beverage industry to dispense liquids. (*Id.* ¶¶ 19–20.) Liqui-Box also developed the Encore fitment specifically for its customer, Pepsi. (*Id.* ¶ 21.) The DET fitment is covered by U.S. Patent No. 7,628,299 ("the '299 Patent"), titled "Threaded Spout" and issued in December 2009. (*Id.* ¶ 24; Patent Text, Ex. 1 to Am. Compl.) Liqui-Box is the sole owner of all right, title, and interest in the '299 Patent. (Am. Compl. ¶ 25.) Not disclosed in the patent is other information—confidential and proprietary technical and engineering data—which Plaintiff contends are trade secrets, including the durable resin blend used to manufacture fitments, the manufacturing and assembly process, and production capabilities. (*Id.* ¶ 28.) Plaintiff also identifies confidential financial and business information as trade secrets, including sales strategies, product pricing, profit margins, customer sales volumes, and contract terms with customers. (*Id.* ¶ 29.)

Defendant Bergenthun worked at Liqui-Box from 1999 to 2016, first in roles in research and development, and later in sales. (*Id.* ¶ 33.) At some point, Bergenthun signed a Non-Disclosure Agreement prohibiting him from divulging to others Liqui-Box's confidential information or trade secrets, and Liqui-Box alleges that it has policies prohibiting its employees from disclosing or using Liqui-Box's confidential or proprietary information outside of their employment. (*Id.* ¶¶ 38–40.) During his time at Liqui-Box, Bergenthun was involved in the development and production of the DET and Encore fitments, and as a result, gained familiarity with some of Liqui-Box's confidential information. (*Id.* ¶ 35.) In his sales role, Bergenthun developed close relationships with many of Liqui-Box's customers, such as Pepsi, and had access to Liqui-Box's confidential sales information. (*Id.* ¶ 37.)

---

[1] A fitment is a "spout assembly designed to connect and disconnect to a connector through which beverages or beverage syrups are dispensed." (Am. Compl. ¶ 16.)

In January 2016, Bergenthun resigned from Liqui-Box and began looking for employment elsewhere. (*Id.* ¶¶ 41, 43.) According to Plaintiff's allegations, deemed true for purposes of this motion, while looking for new employment, Bergenthun "approached a senior officer at one of Liqui-Box's other competitors to seek employment and promoted his ability to use information derived from his employment with Liqui-Box to help the competitor gain commercial success at top beverage customers that are currently supplied by Liqui-Box." (*Id.* ¶ 43.) Plaintiff does not identify the competitor that Bergenthun allegedly approached, but alleges that in the first half of 2016, Bergenthun began working as a Regional Commercial Director for one or both of the Scholle Defendants, competitors of Plaintiff. (*Id.* ¶¶ 45–46.) Upon learning of Bergenthun's employment with Scholle in July 2016, Plaintiff sent a letter to Scholle warning that Bergenthun had access to Plaintiff's confidential information and its customer relationships. (*Id.* ¶ 47.) Scholle's general counsel responded by assuring Liqui-Box that its confidential information would not be used improperly. (*Id.* ¶ 48.) But Plaintiff believes that Scholle hired Bergenthun for the specific purpose of using his knowledge of Liqui-Box's patented technology and confidential information to compete with Liqui-Box, and that Bergenthun used this information to help Scholle develop its Versi fitment. (*Id.* ¶¶ 52, 54–55, 61.)

Plaintiff alleges that prior to Bergenthun's employment with Scholle, Scholle did not have a fitment that was compatible with a variety of beverage industry connectors to compete with Liqui-Box's DET fitment, nor did Scholle have a fitment like the Liqui-Box Encore that could be used with Pepsi's dispenser connections. (*Id.* ¶¶ 50–51.) In February 2019, Scholle announced a new product—the Versi fitment (the "accused product"), described on Scholle's website as the "first universal high-flow beverage fitment compatible with all relevant fountain connectors and filling equipment." (*Id.* ¶ 53.) The Scholle Defendants have submitted a patent application (No. 14/327,820) to the Patent and Trademark Office ("PTO") for the Versi fitment; they note that the patent application cited in Plaintiff's complaint (see Am. Compl. ¶ 71), was filed in 2014, two years before Scholle hired Bergenthun. (Defs.' Mot. to Dismiss ("MTD") [27] at 1 n.1.) Plaintiff alleges

3

that the Versi fitment mimics features of both the DET and the Encore fitments. (Am. Compl. ¶¶ 56, 58.) Plaintiff also alleges that Bergenthun has contacted Liqui-Box customers to encourage them to purchase Scholle's products. (*Id.* ¶ 60.)

The '299 Patent contains three claims, but the only one relevant here is claim 1, which describes Plaintiff's DET fitment and which, Plaintiff alleges, is the claim infringed by Defendants' Versi fitment:

> 1. A threaded spout for use on a collapsible bag for dispensing of liquids and semi-liquids from the bag, the spout comprising a hollow cylindrical body having an external surface for mating with a collar of a dispensing connector, the external surface includes:
>    (a) a threaded portion which comprises two opposing threads of equal geometries for mating with an internal surface of the collar of the dispensing connector, wherein the opposing threads are spaced from each other on the external surface to provide a lead-in to the internal surface of the collar of the dispensing connector and the opposing threads extend from and form part of an upper external flange located on the external surface of the spout, and
>    (b) a second external flange located beneath and spaced from the upper external flange and towards a base portion of the spout,
> a lower portion of the threads being located on either side of the spout, extending around the external surface of the spout, and extending into the upper flange on the external surface, wherein each thread has a lower end which is tapered, the spout having at one end thereof the base portion for securing the spout to the collapsible bag.

(*Id.* ¶ 27; *see also* Patent Text.) Plaintiff's complaint includes a chart listing each limitation of claim 1 of the '299 Patent and using arrows and annotations to point to the elements of the Versi fitment that Plaintiff alleges correspond either literally or in a substantially equivalent manner with each claim limitation. (Am. Compl. ¶ 73.) For purposes of this opinion, the court will refer to this chart as a claim chart, but to be clear, no claim construction proceeding has yet occurred.

Plaintiff brings a nine-count complaint against Defendants Scholle and Bergenthun. Plaintiff alleges that the Scholle Defendants infringed the '299 Patent, *see* 35 U.S.C. § 271(a), (Count I), misappropriated Liqui-Box's trade secrets in violation of the federal Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.*, and the Illinois Trade Secrets Act, 75 ILCS 1065/1 (Counts II and III), tortiously interfered with Liqui-Box's contracts and economic advantage (Counts V and VI), falsely or deceptively advertised the Versi fitment in violation of the Lanham Act, 15 U.S.C.

4

§ 1125(a)(1), (Count VII), and engaged in deceptive trade practices (Count VIII). Plaintiff also alleges that Bergenthun breached his non-disclosure agreement (Count IV), and conspired with the Scholle Defendants to commit various torts (Count IX). Defendants have moved to dismiss two of the nine counts. First, the Scholle Defendants move to dismiss Plaintiff's claim that the Versi fitment infringes the '299 Patent. Second, all Defendants move to dismiss Plaintiff's ninth cause of action alleging that the Scholle Defendants and Defendant Bergenthun conspired to commit the alleged patent infringement, trade secret misappropriation, breach of contract, and tortious interference with contracts and prospective economic advantage claims.

## **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In deciding a motion to dismiss, the court accepts the well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Manistee Apartments, LLC v. City of Chicago*, 844 F.3d 630, 633 (7th Cir. 2016). The court may consider the complaint, "documents that are attached to the complaint, documents that are central to the complaint and referred to in it, and information that is properly subject to judicial notice," *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013), including matters in the public record. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th Cir. 2012); FED. R. EVID. 201(b). The law of this Circuit governs the procedural standards applicable to Defendants' motion to dismiss, but Federal Circuit precedent controls the substantive elements of Plaintiff's patent infringement claim. *See Lecat's Ventriloscope v. MT Tool & Mfg.*, No. 16 C 5298, 2017 WL 1362036, at *3 n.1 (N.D. Ill. Jan. 6, 2017).

5

**DISCUSSION**

In Count I, Plaintiff alleges that Scholle's Versi fitment infringes at least claim 1 of the '299 Patent. Plaintiff alleges in Count IX that Defendant Bergenthun and the Scholle Defendants conspired to use Liqui-Box's confidential information and trade secrets to develop the infringing fitment and to interfere with Liqui-Box's customer relationships, all in violation of Bergenthun's Non-Disclosure Agreement with Liqui-Box and federal and state trade secret laws. The court addresses Defendants' challenges to both claims below.

**I.    Direct Patent Infringement**

Defendants' challenge to Plaintiff's patent infringement claim focuses on subsection (a) of claim 1 of the '299 Patent. This subsection describes part of the external surface of the patented spout as "a threaded portion which comprises two opposing threads of equal geometries for mating with an internal surface of the collar of the dispensing connector." (Patent Text at 10.) Defendants emphasize that the claim describes a spout with two opposing threads *of equal geometries*, and argue that Plaintiff has failed to allege facts showing that the accused product could plausibly meet the "of equal geometries" limitation because the claim chart in the complaint does not clearly show how this portion of claim 1 reads on the accused product. In any case, Defendants contend, the accused product has threads of different lengths and, therefore, does not meet the "of equal geometries" limitation. Defendants also urge this court to find that Plaintiff is estopped by the '299 Patent's prosecution history from relying on the doctrine of equivalents to support its claim of patent infringement. And because Plaintiff cannot show literal infringement, in Defendants' view, amendment to the complaint would be futile.

As the court will explain in more detail below, the court finds that Plaintiff has plausibly alleged infringement of claim 1 of the '299 Patent, either literally or under the doctrine of equivalents. Defendants' argument for non-literal infringement focuses, essentially, on the merits of the infringement dispute. Such an inquiry is premature on a motion to dismiss. Deciding that prosecution history estoppel bars Plaintiff from asserting infringement based on the doctrine of

equivalents is also premature at this stage. As an initial matter, neither party has included in the record any documents from the prosecution history, and Plaintiff disputes Defendants' account of that history. Accordingly, Defendants' motion to dismiss Plaintiff's patent infringement claim is denied.

### A. Adequacy of Pleading

"[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. 271(a). A patentee can establish a claim of infringement either by showing literal infringement or by relying on the doctrine of equivalents. A showing of literal infringement of a patent claim requires that "every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995). To establish infringement under the doctrine of equivalents, the "difference between the claimed invention and the accused product" must be "insubstantial," or the accused product must "perform[ ] the substantially same function in substantially the same way with substantially the same result as each claim limitation of the patented product." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1354 (Fed. Cir. 2018). Each part of a patent claim is "material to defining the scope of the patented invention," so the doctrine of equivalents is "applied to individual elements of a claim, not to the invention as a whole." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997). To survive a motion to dismiss, Plaintiff "must plead that every limitation, or equivalent thereof, in the [ ] claim can plausibly be found in [the] accused product," *Atlas IP, LLC v. City of Naperville*, No. 15 C 10744, 2016 WL 3907029, at *3 (N.D. Ill. July 19, 2016), but Plaintiff need not "prove its case at the pleading stage." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012).

The pleading bar is not a high one. In *Disc Disease*, the Federal Circuit reversed dismissal of a direct patent infringement claim involving a "simple technology"—a spinal brace with an "air injectable band with a rigid panel worn around the waist"—and patents "consist[ing] of only four

7

independent claims." *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1257, 1260 (Fed. Cir. 2018). The complaint identified the three accused products "by name and by attaching photos of the product packaging as exhibits," and alleged that the accused products met "each and every element of at least one claim of the . . . Patent[s]," which were attached to the complaint, "either literally or equivalently." *Id.* at 1260. The court found that the brief disclosures and allegations included in the complaint were "sufficient under the plausibility standard of *Iqbal*/*Twombly*" to provide the defendant "fair notice of infringement of the asserted patents." *Id.* In this case, Plaintiff's complaint provides a more detailed description of the alleged patent infringement than the complaint found sufficient in *Disc Disease*. As in that case, the beverage-dispensing spout at issue here involves a relatively simple technology. *Compare* the "simple" inventions in *Artrip v. Ball Corp.*, 735 F. App'x 708, 709 (Fed. Cir. 2018) ("[A] press assembly and method for forming the lift-tab can ends used for opening beverage cans."), *and EZ STAK, LLC v. Dejana Truck & Util. Equip. Co., LLC*, No. 17 C 8742, 2018 WL 2933603, at *1 (N.D. Ill. June 12, 2018) ("[I]nterior vehicle shelving systems."), *with* "complex" inventions in *Lexington Luminance LLC v. Serv. Lighting & Elec. Supplies, Inc.*, No. 3:18-CV-01074-K, 2018 WL 10425908, at *2 (N.D. Tex. Oct. 9, 2018) ("[A]n LED light involving a particular structure and chemical composition."), *and LoganTree LP v. Garmin Int'l, Inc.*, No. 17-1217-EFM-KGS, 2018 WL 3458519, at *4 (D. Kan. July 18, 2018) ("[A] device worn by an individual that measures, analyzes, and records data about the individual's body movements using an accelerometer, programmable microprocessor, internal clock, and memory."). Moreover, this dispute involves just one claim of the '299 Patent and a single accused product.

As in *Disc Disease*, Plaintiff's complaint specifically identifies the accused product by its name and includes photographs of the product. *Cf. Artrip*, 735 F. App'x at 714–15 (dismissing a complaint for failure to state a claim because the Plaintiff stated that "one or more of the machines at least at the [ ] Plant" infringed the patents, but failed to identify which of the defendant's machines, in particular, were accused of infringement). True, Plaintiff's complaint simply repeats

the exact language of claim 1 in describing Scholle's Versi fitment, but the allegations nevertheless provide greater notice about how the Versi fitment allegedly violates the '299 Patent than did the one-sentence description in *Disc Disease.* Specifically, Plaintiff's claim chart includes photographs annotated with arrows showing which part of the Versi fitment is described by the claim and corresponds to each claim limitation. And Plaintiff's claim chart includes all of the language of claim 1, identifying features of the accused product that correspond to every claim limitation. Accordingly, the complaint contains, as required to plausibly state a claim, allegations that "every limitation, or equivalent thereof, . . . can plausibly be found in [the] accused product." *Atlas IP*, 2016 WL 3907029, at *3.

The Scholle Defendants characterize Plaintiff's allegations as conclusory, but the court disagrees. The complaint does more than merely "parrot back the language of the[ ] claim elements and then state[ ] that the accused product is comprised of such elements." *North Star Innovations, Inc. v. Micron Tech., Inc.,* No. CV 17-506-LPS-CJB, 2017 WL 5501489, at *2 (D. Del. Nov. 16, 2017); *see also Atlas IP*, 2016 WL 3907029, at *3. In situations of claim "parroting," courts have found that an asserted claim of patent infringement is not plausible, because there must be "*some facts* alleged that articulate *why it is plausible* that the other party's product infringes that patent claim—not just the patentee asserting, in conclusory fashion, that it is so." *North Star*, 2017 WL 5501489, at *2 (citing *L.M. Sessler Excavating & Wrecking, Inc. v. Bette & Cring, LLC*, No. 16-CV-06534-FPG, 2017 WL 4652709, at *4 (W.D.N.Y. Oct. 17, 2017) ("By describing Defendant's conduct solely in the words of its own patent, Plaintiff implicitly concludes that Defendant's process necessarily meets every element of the patent claim—a legal determination, not a factual allegation.")). In this case, in describing the accused product, Plaintiff not only repeats the wording of its patent claims ("[t]he Infringing Fitment has, either literally or by equivalents, two opposing threads of equal geometries for mating with an internal surface of the collar of the dispensing connect[or]," (Am. Compl. at 23)), but also provides the annotated image described above. That image, including the arrows that identify which specific element of the

9

accused product allegedly corresponds to each claim limitation, is enough to plausibly allege that the Scholle Versi fitment infringed claim 1 of Plaintiff's patent.

The Scholle Defendants also contend that Plaintiff does not specifically allege that the threads in the accused product are "of equal geometries," and therefore does not provide notice of the infringement alleged. Of particular significance for Defendants is the Plaintiff's placement of the "[C]" referent in the claim chart. (*See id.* at 23.) Because Plaintiff has placed the "[C]" referent "just before the terminology 'of equal geometries' of claim 1, and not after it," Defendants urge, Plaintiff has not pleaded any plausible facts pointing to the "of equal geometries" feature in the accused product. (MTD at 4; Defs.' Reply [35] at 2.) As the court understands this argument, Defendants are suggesting that Plaintiff needs to point out the "of equal geometries" feature of the accused product separately from the "two opposing threads" feature. Defendants presumably assume that the "two opposing threads" and "of equal geometries" language must be understood as separate claim limitations. When giving claim language its "broadest possible construction," however, as the court must on a motion to dismiss, "two opposing threads of equal geometries" can be considered one claim limitation. *In re Bill of Lading*, 681 F.3d at 1343 n.13. Viewed as a single claim limitation, "two opposing threads of equal geometries" can properly be identified in a claim chart with a single referent and a single arrow directed at the corresponding feature in an image of the accused product. The placement of the "[C]" referent aside, language describing the accused product clearly states that "[t]he Infringing Fitment has, either literally or by equivalents, two opposing threads of equal geometries for mating with an internal surface of the collar of the dispensing connect[or]." (Am. Compl. at 23.) That is, the complaint does not, in fact, clearly and carefully avoid identifying the purportedly infringing subject matter. (*Cf.* MTD at 4; *AMS, LLC v. Muzzy, LLC*, No. 18-cv-583-wmc, 2019 WL 1435844, at *1–2 (W.D. Wis. Mar. 29, 2019) (granting a motion to dismiss because the patented product, a bottle slide, functioned by using a pad, stop, and screw, but "conspicuously absent" was any allegation that the accused product included a pad; that is, "the absence of any affirmative assertion that a pad [was] present

10

in the accused product [was] highlighted by the fact that AMS *explicitly* mentions the use of a "stop" and a "screw" in [defendant's] bottle slide").) Plaintiff is not required to prove its case in its pleadings. At this stage, more detailed information about how, specifically, the Versi fitment allegedly infringes claim 1 of the '299 Patent is not necessary.[2] *See In re Bill of Lading*, 681 F.3d at 1339.

Defendants also challenge the accuracy of Plaintiff's allegations, but that challenge is not a basis for dismissal, either. Specifically, Defendants argue that the accused product has "two threadforms of completely different geometries" because they are "of different lengths." (MTD at 3.) The "purpose of a motion to dismiss is to test the sufficiency of the complaint," accepting all well-pleaded factual allegations as true, "not to decide the merits" or resolve factual disputes. *Nalco*, 883 F.3d at 1350 (quoting *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990)). And, as already discussed, when accepting all well-pleaded factual allegations of infringement as true, Plaintiff has stated a plausible claim for relief. Defendant's argument invites the court to take judicial notice of Scholle's own patent application which, according to Scholle, covers the accused product and allegedly describes that product's threads as having different lengths. The court declines the invitation. Plaintiff did cite Scholle's patent application in the complaint (*see* Am. Compl. ¶ 71), but only for the purpose of establishing that Scholle had notice of Plaintiff's own '299 Patent. Accordingly, even had either party included as an exhibit the Scholle patent or the patent application, the documents are not "central to the complaint" and are therefore not properly considered by the court on this motion to dismiss. *See Midwest Innovative Prod., LLC v. Kinamor, Inc.*, No. 16 CV 11005, 2017 WL 2362571, at *2–3 (N.D. Ill. May 31, 2017) (quoting *Williamson*, 714 F.3d at 436).

---

[2] For the same reason, the court is not at this point troubled by Defendants' observation that the photographs in the claim chart are unclear. That lack of clarity does not warrant dismissal. (*See* MTD at 9.)

Further, the court's taking judicial notice of the Scholle Patent would not obviously require dismissal of the complaint. Judicial notice would require the court to compare the claims of the Scholle Patent with those of the '299 Patent to decide whether a spout assembly with threadforms of different lengths plausibly infringes a claim describing a spout assembly with threads of equal geometries. Such a comparison would essentially require the court to construe claim 1 of the '299 Patent and compare it to the allegedly infringing Versi fitment—not an appropriate exercise at this stage. "[D]istrict courts have 'repeatedly held that if a court is required to construe the meaning of claim terms and perform an infringement analysis in order to resolve a motion to dismiss . . . the motion should be denied, because this type of analysis is inappropriate at the pleading stage." *Lecat's Ventriloscope*, 2017 WL 1362036, at *4. In *Lecat's Ventriloscope*, the defendant argued that the term "auscultation device" was correctly construed to include only "devices capable of the act of listening to sounds arising within the organs." *Id.* And while the court noted that defendant's interpretation "may ultimately have merit," accepting the defendant's argument "would require the [c]ourt to do exactly what the Federal Circuit has cautioned against"—"construing claim language to resolve, at the pleading stage, what are effectively non-infringement arguments." *Id.* Similarly here, Defendants' contention that a threaded spout assembly with two threadforms of different lengths does not infringe a patent claim describing a threaded spout with two threads of equal geometries may ultimately have merit. The court nevertheless declines to construe the claim term "two opposing threads of equal geometries" without the benefit of the claim construction process. Courts must give patent claims "their broadest possible construction" on a motion to dismiss. *In re Bill of Lading*, 681 F.3d at 1343 n.13. Because a dispute over claim construction is "not suitable for resolution" at this stage, the court denies Defendants' motion to dismiss Plaintiff's patent infringement claim. *Nalco*, 883 F.3d at 1349; *see also In re Bill of Lading*, 681 F.3d at 1343 n.13 (explaining that a court should not "base[ ] its assessment of the 'reasonableness' of a given inference of infringement on a narrow

construction of the patent's claims," because "claim construction at the pleading stage—with no claim construction process undertaken—[is] inappropriate").

B.     Prosecution History Estoppel

Defendants' second argument for dismissal of the patent claim rests on prosecution history estoppel. Defendants assert that during the prosecution of the '299 Patent, Plaintiff amended claim 1 to add the "of equal geometries" limitation to the "two opposing threads" element to overcome prior art. (MTD at 2 (citing a May 2009 response in the patent prosecution history).) As a result, Defendants contend, the prosecution history of the '299 Patent precludes reliance on the doctrine of equivalents, meaning that in order to succeed on its claim of patent infringement, Plaintiff must prove that every limitation of claim 1 of the '299 Patent can literally be found in the Versi fitment. And because, in Defendants' view, Plaintiff cannot show literal infringement, Plaintiff is estopped from arguing that the accused product infringes the '299 Patent.

"Prosecution history estoppel requires that the claims of a patent be interpreted in light of the proceedings in the PTO during the application process." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 733 (2002). In general, the doctrine of equivalents allows a patentee to claim "insubstantial alterations" not captured in the original patent. *Id.* When, however, "the patentee originally claimed the subject matter alleged to infringe but then narrowed the claim in response to a rejection [by the PTO], he may not argue that the surrendered territory comprised unforeseen subject matter that should be deemed equivalent to the literal claims of the issued patent." *Id.* at 733–34. Prosecution history estoppel can occur either when a patentee "mak[es] a narrowing amendment to the claim ('amendment-based estoppel')," or when a patentee "surrender[s] claim scope through argument to the patent examiner ('argument-based estoppel')." *Amgen Inc. v. Coherus BioSciences Inc.*, 931 F.3d 1154, 1159 (Fed. Cir. 2019). Not every narrowing amendment warrants application of prosecution history estoppel, however. Instead, estoppel arises when the claim was amended "to obtain the patent," for example, to "avoid the prior art," or to address a specific concern, such as obviousness, "that arguably would

13

have rendered the claimed subject matter unpatentable." *Festo*, 535 U.S. at 734–35. Additionally, narrowing amendments do not "relinquish equivalents unforeseeable at the time of the amendment," or "claims of equivalence for aspects of the invention that have only a peripheral relation to the reason the amendment was submitted." *Id.* at 738.

The court declines to decide at this stage whether prosecution history estoppel bars a "doctrine of equivalents" argument in this case. Defendants raise this issue in the context of arguing that Plaintiff's complaint should be dismissed with prejudice because prosecution history estoppel would render futile any attempt by Plaintiff to amend its complaint. But the court concludes Plaintiff has adequately alleged that the Versi fitment infringes claim 1 of the '299 Patent, either literally or equivalently. In any event, to determine whether the '299 Patent's prosecution history estops Plaintiff from proceeding under the doctrine of equivalents, the court would be required to resolve conflicting facts and the parties' conflicting interpretations of the prosecution history. As noted, Defendants assert that Plaintiff added the "equal geometries" language to claim 1 in order to overcome prior art, which Plaintiff denies. Instead, Plaintiff asserts, the '299 Patent originally had seven claims and the "equal geometries" language appeared originally in claim 2, not claim 1. (Pl.'s Resp. [32] at 10.) The patent examiner rejected claims 1 and 2, but did not reject claim 7 which was dependent on claim 2.[3] (*Id.*) After the original rejection, Plaintiff amended claim 1 to include the requirement of claim 7 which, because it depended on claim 2, led to the inclusion of the "of equal geometries" language. (*Id.*) Plaintiff characterizes this amendment as one that is "merely tangential" and that does not give rise to prosecution history estoppel. (*Id.* (citing *Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1368 (Fed. Cir. 2004).)

The applicability of prosecution history estoppel may sometimes be decided on a motion to dismiss because it is a question of law. *See, e.g., Amgen*, 931 F.3d at 1159. In *Amgen*, for

---

[3] Plaintiff does not cite the language of original claim 7 or indicate what it covered.

example, the Federal Circuit affirmed that the patentee had "clearly and unmistakably surrendered salt combinations [used in the patented method of purifying proteins] other than the particular combinations recited in the claims," meaning that plaintiff was estopped from establishing infringement by reliance on the doctrine of equivalents. *Id.* During prosecution, the patentee had repeatedly emphasized "particular" when referring to "particular combinations of salts" used in its methods, and "referred to its particular salts three times in the span of two pages." *Id.* at 1160. Of note, the lower court found that the facts in the prosecution history were undisputed: "[plaintiff] acknowledges each of the statements to which [defendant] points and does not identify any conflicting evidence." *Amgen Inc. v. Coherus Biosciences Inc.*, No. CV 17-546-LPS-CJB, 2018 WL 1517689, at *4 (D. Del. Mar. 26, 2018), *aff'd*, 931 F.3d 1154 (Fed. Cir. 2019). Instead, the plaintiff disputed the correct interpretation of those facts, but the court had "sufficient context" to "make a decision of law that prosecution history estoppel applie[d]." *Id.* The plaintiff also acknowledged that the defendant's method did not literally infringe its patent, so permitting amendment of the complaint would have been futile. *Id.*

Here, in contrast, Plaintiff alleges that Defendants' Versi product literally or equivalently infringes its patent. Plaintiff has also identified conflicting evidence from the prosecution history and argues that inclusion of the "equal geometries" language was only tangential to the reason the amendment was submitted. Resolving factual disputes is not appropriate at the motion to dismiss stage. *See Nalco*, 883 F.3d at 1349; *see also Kyowa Hakka Bio, Co., Ltd. v. Ajinomoto Co., Inc.*, No. CV 17-313, 2018 WL 834583, at *6 (D. Del. Feb. 12, 2018) ("[T]he scope of estoppel depends on factual questions regarding the prosecution history, which may preclude a disposition of the issue not only on a motion to dismiss, but on summary judgment."). Significantly, neither party has included as an exhibit documents from the prosecution history relevant to this issue. *See Kinamor*, 2017 WL 2362571, at *2 (explaining that a "court may take judicial notice of patents or patent applications," but declining to do so because the "patent application and the prosecution histories [were] not referred to in [plaintiff's] complaint and [were] not central to its claim for

infringement"). Accordingly, the court has no context from which to determine which inferences may properly be drawn from the prosecution history, nor to decide as a matter of law that prosecution history estoppel applies. *Cf. Amgen*, 2018 WL 1517689, at *4. In sum, without the benefit of a more developed record, the court declines to decide whether the prosecution history of the '299 Patent bars Plaintiff from relying on the doctrine of equivalents.

## II.     Civil Conspiracy

In Count IX, Plaintiff has alleged that Defendants conspired to commit the alleged patent infringement, trade secret misappropriation, breach of contract, and tortious interference claims. Defendants ask the court to dismiss this claim because of the intra-corporate conspiracy doctrine—that employers cannot conspire with their employees—and because the conspiracy claim is duplicative of the underlying torts that are independently pleaded in the complaint.

### A.     Intra-Corporate Conspiracy Doctrine

A plaintiff alleging the existence of a civil conspiracy under Illinois law must show "(1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Doctor's Data, Inc. v. Barrett*, 170 F. Supp. 3d 1087, 1158–59 (N.D. Ill. 2016) (quoting *Fritz v. Johnston*, 209 Ill. 2d 302, 317, 807 N.E.2d 461, 470 (Ill. 2004)). Participation in the common scheme must be knowing and voluntary. *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 133, 720 N.E.2d 242, 258 (Ill. 1999). Importantly, the Illinois intra-corporate conspiracy doctrine "holds that an agent acting within the scope of his employment cannot conspire with its principal or with other agents of that principal." *Id.*; *see also Bilut v. Nw. Univ.*, 296 Ill. App. 3d 42, 49, 692 N.E.2d 1327, 1332 (1st Dist. 1998) ("As a general rule of law, principals and agents are legally incapable of conspiring with one another because the acts of an agent are considered the acts of his principal.").

As Defendants note, the complaint describes an alleged conspiracy between Bergenthun and the Scholle Defendants after Bergenthun began working for Scholle. An employee cannot

16

generally conspire with his employer when acting within the scope of his employment, and a corporation generally cannot conspire "with its unincorporated divisions or wholly owned subsidiaries," but there are some exceptions. *Chen v. Mayflower Transit, Inc.*, 159 F. Supp. 2d 1103, 1112 (N.D. Ill. 2001) (citing *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 769–70 (1984)). There can be a conspiracy where the agent's interests diverge from those of the principal, and the "agent at the time of the conspiracy is acting beyond the scope of his authority or for his own benefit, rather than [for] that of the principal." *Bilut*, 296 Ill. App. 3d at 49, 692 N.E.2d at 1332. For example, an agent with an "independent personal stake" in the corporate action may conspire with his principal, *Hartman v. Bd. of Trustees of Cmty. Coll. Dist. No. 508, Cook Cty. Ill.*, 4 F.3d 465, 470 (7th Cir. 1993), or an individual may conspire with his future employer prior to the start of his employment. *See, e.g., Thomas & Betts Corp. v. Panduit Corp.*, 108 F. Supp. 2d 968, 975 (N.D. Ill. 2000).

Plaintiff acknowledges that Bergenthun has been an employee of Scholle since mid-2016 (Am. Compl. ¶ 45), but nonetheless contends that this alleged conspiracy falls within at least one of the above exceptions. Plaintiff suggests that Defendants admitted in their motion to dismiss that Bergenthun is employed solely by Defendant Scholle IPN Packaging, Inc. and not by Scholle IPN Corporation. (Pl.'s Resp. at 12.) Accordingly, Plaintiff posits, Bergenthun and Scholle IPN Packaging, Inc. conspired with Scholle IPN Corporation. (*Id.*) For several reasons, the court is not persuaded. First, Defendants contend they have not admitted that Bergenthun was employed solely by Scholle IPN Packaging, Inc. (*See* Defs.' Reply at 7.) Second, Plaintiff has alleged in its complaint that Bergenthun was employed as a Regional Commercial Director for "one or both of the Scholle Defendants" (Am. Compl. ¶ 45), not that Bergenthun was employed solely by Scholle IPN Packaging, and it is "axiomatic" that "a plaintiff may not amend [its] complaint in [its] response brief." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011). Finally, the conspiracy cause of action contains no allegations against the Scholle Defendants separately. (*See* Am. Compl. ¶¶ 137–42.) Instead, Scholle IPN Packaging, Inc. and

17

Scholle IPN Corporation are collectively referred to as the "Scholle Defendants." If Plaintiff believes their interests are independent, Plaintiff will have to amend the complaint; a corporation generally cannot conspire with its wholly-owned subsidiaries because they "have a complete unity of interest." *Copperweld*, 467 U.S. at 771. Whatever the precise relationship between the Scholle entities may be, Defendant correctly notes that Plaintiff has not alleged that the interests of the Scholle Defendants diverge at all, or that they otherwise acted independently such that it would be possible for them to conspire. (Defs.' Reply at 7.)

Plaintiff also argues that the intra-corporate conspiracy doctrine does not apply in this situation because "Bergenthun, as an employee of Scholle IPN Packaging, Inc., could have been operating outside the scope of his employment for his own benefit by providing information to Scholle IPN Corporation." (Pl.'s Resp. at 12.) But the complaint contains no allegation that Bergenthun acted either outside the scope of his employment or for his own benefit. Instead, the conspiracy was allegedly carried out "for the benefit of Scholle's design of the Infringing Fitment," and "for the benefit of Scholle in connection with Scholle's development, manufacture, and sale of the Infringing Fitment and of products including the Infringing Fitment." (Am. Compl. ¶ 140(a), (b).) There is no allegation that Bergenthun personally benefitted from disclosing confidential information or trade secrets to the Scholle Defendants; the closest allegation in the complaint is that Bergenthun, while searching for employment, "attempted to make himself more attractive in the marketplace by offering to provide the trade secret and confidential information that he learned at Liqui-Box." (*Id.* ¶ 44.) Plaintiff has not alleged, however, that Bergenthun made this offer to the Scholle Defendants (*cf. id.* ¶ 43), nor is this alleged offer to disclose confidential information otherwise linked in the complaint to the conspiracy. Again, Plaintiff may not attempt to add factual allegations to its complaint in a response brief. *Pirelli*, 631 F.3d at 448.

Plaintiff last argues that the intra-corporate conspiracy doctrine does not apply to actions taken before Bergenthun's hiring by the Scholle Defendants in July 2016. (Pl.'s Resp. at 13.) True, an employee may conspire with his employer if the employee committed acts in furtherance

of a conspiracy prior to the start of his employment with his future employer. *Mainline Info. Sys., Inc. v. Benkendorf*, No. 10 C 1264, 2010 WL 2011618, at *5 (N.D. Ill. May 20, 2010). Again, however, Plaintiff's complaint contains no allegations of overt acts in furtherance of the alleged conspiracy between Bergenthun and the Scholle Defendants prior to Bergenthun's employment. Again, Liqui-Box asserts that after leaving its employ, Bergenthun "approached a senior officer at one of Liqui-Box's *other competitors* to seek employment and promoted his ability to use information derived from his employment with Liqui-Box . . . ." (Am. Compl. ¶ 43 (emphasis added).) But Plaintiff does not identify the other competitor, nor allege that Bergenthun made the same offer to the Scholle Defendants. Similarly, Plaintiff alleges that "Bergenthun was hired for the specific purpose of using his knowledge of Liqui-Box's patented technology and confidential information and trade secrets to help Scholle 'catch up' to the DET and Encore fitments, and to capitalize on his prior relationship with and confidential knowledge about Liqui-Box beverage customers including Pepsi." (*Id.* ¶ 52.) But there is no allegation that Bergenthun approached the Scholle Defendants to offer this confidential information about Liqui-Box's products and customers, or that he committed another tortious act in furtherance of the alleged conspiracy prior to his employment with Scholle.

### B. Duplication of Independently-Pleaded Torts

Apart from the flaws already identified, Defendants argue that the conspiracy claim must be dismissed as duplicative of other independently-pleaded tort claims because the conspiracy allegations include no new facts and do not extend liability to additional defendants. The court Is is uncertain that this argument would by itself doom Count IX; having concluded the conspiracy claim must be dismissed for other reasons, the court declines to address this issue.

### **CONCLUSION**

Plaintiff has plausibly alleged that the Versi fitment created by the Scholle Defendants infringes Plaintiff's '299 Patent. Plaintiff, however, has failed to state a conspiracy claim against the Scholle Defendants and Defendant Bergenthun. Accordingly, Defendants' motion to dismiss

for failure to state a claim [27] is granted in part and denied in part. Count I survives this motion; Count IX is dismissed without prejudice to submission of a proposed amended complaint within 45 days.

ENTER:

Date: March 27, 2020

_____
REBECCA R. PALLMEYER
United States District Judge