**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**LIQUI-BOX CORPORATION,**

**Plaintiff,**

**v.**

**SCHOLLE IPN CORPORATION, SCHOLLE IPN PACKAGING, INC., and KEVIN BERGENTHUN,**

**Defendants.**

**SCHOLLE IPN CORPORATION, SCHOLLE IPN PACKAGING, INC.,**

**Counterclaim-Plaintiffs,**

**v.**

**LIQUI-BOX CORPORATION, LIQUI-BOX FLEXIBLES, LLC, CORPLEX PLASTICS, UK LTD., STANLEY BANAS, and LAWRENCE VOELKL,**

**Counterclaim-Defendants.**

**No. 19 C 4069**

**Judge Rebecca R. Pallmeyer**

# MEMORANDUM OPINION AND ORDER

Plaintiff Liqui-Box Corporation and Defendants Scholle IPN Corporation and Scholle IPN Packaging, Inc. (collectively "Scholle") are competitors that manufacture "bag-in-box and fitmented flexible liquid packaging solutions" used to hold and dispense products such as beverages.[1] (Countercl. [37] ¶ 15; Answer [37] ¶ 1.) In this lawsuit, Liqui-Box alleges that Scholle and one of its employees, Kevin Bergenthun, infringed one of Liqui-Box's patents and misappropriated Liqui-Box's trade secrets, among other claims. (*See* Am. Compl. [24].) Scholle responded with a thirteen-count Counterclaim [37] against Liqui-Box, other businesses, and two individuals. Relevant here, Scholle alleges that its former employee, Counter-Defendant Lawrence Voelkl, accepted a position with Liqui-Box and later disclosed to Liqui-Box employees Scholle's confidential and proprietary information, as well as its trade secrets, in violation of his

[1] Scholle does not define "fitment," but in its complaint, Liqui-Box states that a fitment is a "spout assembly designed to connect to a connector through which beverages or beverage syrups are dispensed." (Am. Compl. ¶ 1.)

contract with Scholle, the Defend Trade Secrets Act, and the Illinois Trade Secrets Act. Voelkl moves to dismiss the claims against him pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction [51]. For the reasons explained below, the motion is denied.

**BACKGROUND**

Lawrence Voelkl worked for Scholle from 1980 until he was laid off in April 2014. (Countercl. ¶¶ 72, 77; Voelkl Decl. ¶ 2, Ex. A to Mem. in Supp. Mot. to Dismiss ("Mot. to Dismiss") [52].) Voelkl held various positions with Scholle, including Technical Service Engineer, Service Manager, Service Director, Regional Business Manager, and Senior Customer Business Manager. He began his employment with Scholle in Irvine, California and continued working in California until 2001. (Voelkl Decl. ¶¶ 3, 10.) Then in 2001, Voelkl moved to Winter Garden, Florida, where he worked remotely for Scholle in sales management positions until April 2014 when he was laid off. (*Id.* ¶¶ 2, 9–10.) In 2015, Voelkl accepted a position to work remotely for Liqui-Box and, Scholle alleges, during his employment with Liqui-Box, disclosed Scholle's confidential and proprietary information as well as its trade secrets. (*Id.* ¶ 16; Countercl. ¶¶ 80–81.) Voelkl still lives in Florida, has never lived or owned property in Illinois, and has no plans to travel to Illinois. (Voelkl Decl. ¶¶ 9, 12, 17.)

In support of this motion, Voelkl has submitted a sworn declaration stating that he was never employed at a Scholle office or facility in Illinois; he has always worked either in California or remotely from Florida. (*Id.* ¶ 13.) Scholle does not dispute this. Scholle acknowledges that Voelkl never maintained a physical office in Illinois, but contends that Voelkl's remote work did involve frequent contacts with Illinois. Scholle offers the declaration of its General Counsel, Dan Buhrfiend, and documentation showing that from May 24, 2010 through December 5, 2013, Scholle reimbursed Voelkl for twenty-six roundtrip flights to Chicago, Illinois and sixty-eight nights at hotels in the Chicago area. (Buhrfiend Decl. ¶¶ 1, 4, Ex. 1 to Scholle Resp. to Voelkl's Mot. to Dismiss ("Scholle Resp.") [64].) Voelkl made five trips to Chicago in 2011, eight trips in 2012, and another eight trips in 2013. (*Id.* ¶ 4.) Voelkl initially stated that between 2001 and April 2014 he typically visited Illinois just two or three times per year, and only at Scholle's request. (Voelkl

Decl. ¶ 11.) In an attempt to dispute the accuracy of Scholle's documentation of a greater number of trips, Voelkl observes that flying to O'Hare airport is not the same as visiting Illinois. (Voelkl Reply [66] at 10.) But Voelkl does not dispute Scholle's documentation of his hotel stays other than to note that Voelkl spent three of the sixty-eight nights in Wisconsin. (*Id.* at 2 n.2.)

Scholle also connects Voelkl with Illinois by noting that Voelkl's direct supervisor between 2012 and March 2014 was Kent Kisselle, who worked out of Scholle's offices in Illinois. (Buhrfiend Decl. ¶ 6.) Moreover, Voelkl used a Scholle-issued computer and "regularly, most likely daily, accessed emails and files that were stored in the Northlake, Illinois servers." (*Id.* ¶ 10.) Scholle asserts that Voelkl communicated regularly with his supervisor and with other Scholle employees in Northlake, Illinois. (Scholle Resp. at 9.) Voelkl also "coordinated the submission of sales orders on behalf of Scholle customers to the Order Management team in Scholle's offices in Northlake." (Buhrfiend Decl. ¶ 11.) Neither party identifies the locations of the customers to which Voelkl sold Scholle products, but Scholle has received and processed sales orders in Northlake since 1952. (*Id.*)

Many of Scholle's employee services are based in its Northlake, Illinois offices. The headquarters of Scholle IPN Packaging, Inc. has been in Northlake since October 1, 2005,[2] and prior to October 1, 2005, Scholle IPN Packaging was a division of Scholle Corporation, which had "some, but not all, headquarter activities located in Northlake, Illinois." (*Id.* ¶ 5.) Both Scholle IPN Corporation and Scholle IPN Packaging, Inc. are currently incorporated in Nevada but have their principal places of business in Northlake, Illinois. (Countercl. ¶¶ 2–3.) Since 1959, Scholle's employees responsible for payroll processing and benefits administration have been located in Northlake. (Buhrfiend Decl. ¶ 7.) Since 1997, Scholle has maintained a bank account with Bank of America in Illinois, and Scholle's payroll processor, ADP, is in Elk Grove Village, Illinois. (*Id.* ¶ 8.) Scholle stores files containing its confidential and proprietary information on servers located in Northlake, Illinois and routes all email communications through those servers. (*Id.* ¶ 9.)

---

[2] Scholle does not state where its headquarters were located before October 2005.

Neither party describes Voelkl's job responsibilities in any detail, but Scholle asserts that Voelkl's work gave him a deep understanding of Scholle's confidential and proprietary information and trade secrets. This information includes the design, production, manufacturing, marketing, sales, and distribution of Scholle's products. (Countercl. ¶ 73.) Voelkl was also involved in the "field implementation of prototype and proprietary filling equipment, bag-in-box fillers, and aseptic equipment," and Voelkl continued to "design and implement equipment" after he moved into managerial roles. (*Id.*) Additionally, through his sales management positions, Voelkl learned about the cost, pricing, and margins of Scholle's products, along with "other financial, economic, and customer information." (*Id.*) This information includes "customer specifications, requirements, product preferences, contacts, contracts, sales and marketing strategies, financial and economic information relating to fitment and flexible bag product pricing, costs, margins, and sales volumes." (*Id.* ¶ 74.) Scholle also alleges that Voelkl had close relationships with many of Scholle's customers. (*Id.*)

To protect its confidential and proprietary information, Scholle requires its employees to sign confidentiality agreements. (*Id.* ¶ 54.) Voelkl signed such an agreement with Scholle on March 19, 1984 in Irvine, California where he was working at the time. (*Id.* ¶ 76; Voelkl Decl. ¶ 6.) The Scholle Corporation Employee Patent, Confidential Information and Non-Solicitation Agreement ("Employee Agreement") requires employees, among other obligations, to maintain the confidentiality of Scholle's confidential and proprietary information regarding the "Company's products, sales, business and affairs," "during [their] employment and thereafter." (Employee Agreement ¶ 4, Ex. 14 to Countercl. [37-14].) Upon termination of employment, the Employee Agreement prohibits former employees from retaining in their personal possession materials and other documents relating to the "business of the Company" and "used, prepared, or received by [the former employees] in connection with or by virtue of [their] employment." (*Id.* ¶ 5.) The Agreement specifies that former employees must "promptly deliver to the Company all such materials in [their] possession or under [their] control and [they] shall not make, retain or give away copies of any such materials." (*Id.*) The Employee Agreement also contains a choice-of-

law and venue clause. (*Id.* ¶ 15.) The Agreement "shall be governed by California law," and "venue shall be proper either in Orange County, California, or in the county, city, or district in which the Company's office or facilities at which [the employee] last was employed is located." (*Id.*)

As noted, Voelkl was laid off from his position with Scholle in 2014. In April of the following year, Voelkl accepted a position as Liqui-Box's Global Equipment Service and Support Manager, and remained in that position until his retirement in March 2019. (Countercl. ¶¶ 8, 80; Voelkl Decl. ¶¶ 14–15.) Liqui-Box is incorporated in Ohio and has its principal place of business in Richmond, Virginia (Am. Compl. ¶ 7), but during his employment with Liqui-Box, Voelkl worked remotely from Winter Garden, Florida. (Voelkl Decl. ¶ 16.) Scholle believes that Liqui-Box offered Voelkl employment "in exchange for, amongst other things, his disclosure of Scholle confidential and proprietary information relating to Scholle's design, development, manufacturing, distribution, shipping details, sales and promotion of Scholle's bag-in-box products and fitments." (Countercl. ¶ 79.) Voelkl denies this allegation. (Voelkl Decl. ¶ 14.)

Scholle alleges that Voelkl breached the Employee Agreement (Count IX) and misappropriated Scholle's trade secrets in violation of the Defend Trade Secrets Act (Count VIII) and the Illinois Trade Secrets Act (Count XI). Specifically, Scholle believes that Voelkl "maintained in his personal possession information and things containing Scholle trade secrets and/or confidential and proprietary information" after the termination of his employment in violation of the Employee Agreement. (Countercl. ¶ 78.) On "information and belief," this information includes "confidential and proprietary information relating to the design, development, manufacture, distribution, promotion and sale of Scholle's products, as well as non-public customer information relating to Scholle's existing customer accounts." (*Id.*) Scholle also alleges that Voelkl misappropriated Scholle's trade secrets by disclosing information concerning a Scholle customer in a January 2016 email to Stanley Banas, a member of Liqui-Box's Corporate Operations Product Support group; Joseph Raker, Liqui-Box's Vice President of Global Sourcing and Equipment Engineering; and Kevin Griffin, Liqui-Box's Sales Director for Key Accounts. (*Id.*

¶ 81.) Scholle attached to its third-party complaint a redacted copy of the email; in the message, Voelkl appears to discuss shipping strategies to optimize customer freight costs, and explains to the recipients how many bags Scholle was able to deliver per "TL" (the court presumes this means "truck load" or "trailer load"). (Voelkl Email, Ex. 12 to Countercl. [37-12]). Scholle also, on "information and belief," alleges that Voelkl disclosed other Scholle confidential information to Liqui-Box executives. (Countercl. ¶ 82.) Voelkl moves to dismiss these claims, asserting that his Employee Agreement with Scholle calls for jurisdiction in California or Florida, and that he does not have sufficient minimum contacts with the State of Illinois to be subject to personal jurisdiction in this court, in part because Illinois's fiduciary shield doctrine bars consideration of Voelkl's contacts with Illinois at Scholle's behest for jurisdictional purposes. (Mot. to Dismiss at 3.)

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) challenges the court's ability to exercise personal jurisdiction over a defendant. A "plaintiff need not include facts alleging personal jurisdiction in the complaint, but 'once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (quoting *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). When a court rules on a Rule 12(b)(2) motion to dismiss without holding an evidentiary hearing, the plaintiff need only make a prima facie case for personal jurisdiction. *Curry*, 949 F.3d at 393 (citing *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 424 (7th Cir. 2010)). If the parties submit affidavits, the court "may weigh the affidavits," but the "plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Curry*, 949 F.3d at 393 (quotations omitted).

## DISCUSSION

When, as here, a court's subject-matter jurisdiction is based on a federal question, 28 U.S.C. § 1331, and supplemental jurisdiction, 28 U.S.C. § 1367, the court has "personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits

authorizes service of process to that defendant." *Curry*, 949 F.3d at 393 (quoting *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010)); *see also* FED. R. CIV. P. 4(k)(1). The parties do not argue that federal law confers personal jurisdiction over Voelkl in Illinois. This court thus may exercise personal jurisdiction over Voelkl only if personal jurisdiction would be proper in an Illinois court. *See Mission Measurement Corp. v. Blackbaud, Inc.*, 287 F. Supp. 3d 691, 706 (N.D. Ill. 2017).

The Illinois long-arm statute permits Illinois courts to exercise personal jurisdiction over nonresident defendants on any "basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). The Seventh Circuit has held that "the Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010); *see also Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017). The Illinois Supreme Court has confirmed that, since its 1990 decision in *Rollins v. Ellwood*, 141 Ill. 2d 244, 565 N.E.2d 1302 (1990) (adopting the fiduciary shield doctrine), "there have been no decisions from this court or the appellate court identifying any substantive difference between Illinois due process and federal due process on the issue of a court's exercising personal jurisdiction over a nonresident defendant." *Russell v. SNFA*, 2013 IL 113909, ¶ 32, 987 N.E.2d 778, 785 (Ill. 2013). Accordingly, the state statutory and constitutional inquiries merge and this court will consider only federal constitutional principles except to the extent required to address Voelkl's fiduciary shield claim. *See id.* at 2013 IL 113909, ¶ 33, 987 N.E.2d at 786. The primary question for the court is whether Mr. Voelkl has "sufficient 'minimum contacts' with Illinois such that the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Tamburo*, 601 F.3d at 700–01 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

## I. The Employee Agreement's Venue Clause

Scholle alleges that Voelkl breached his Employee Agreement by disclosing to Liqui-Box employees some of Scholle's confidential and proprietary information. (Scholle Resp. at 6.) As noted, the Employee Agreement that Voelkl signed with Scholle contains choice-of-law and venue

clauses stating that the agreement "shall be governed by California law," and that venue "shall be proper either in Orange County, California, or in the county, city, or district in which the Company's office or facilities at which [he] last was employed is located." (Employee Agreement ¶ 15.) Personal jurisdiction is waivable, and Voelkl's agreement to a venue clause could be understood as waiving a personal jurisdiction objection so long as the case is brought in the proper venue. *See, e.g. Guaranteed Rate, Inc. v. Conn*, 264 F. Supp. 3d 909, 924 (N.D. Ill. 2017) (quoting *Nw. Nat'l Ins. Co. v. Frumin*, 739 F. Supp. 1307, 1310 (E.D. Wis. 1990)) ("[W]hen a party consents to venue in a particular court, it implicitly consents to the exercise of personal jurisdiction by that court."). Voelkl interprets the venue clause to mean that venue is proper only in California or Florida. (Mot. to Dismiss at 9.) The court notes, however, that under the venue clause it is the company's office or facility that determines proper venue, not the location of an employee's home office. That would make venue proper in California or Illinois, as there is no indication that Scholle has ever maintained an office in Florida. But for reasons that are unclear to the court, Scholle does not challenge Voelkl's interpretation of the venue provision (*see* Scholle Resp. 11–12), and does not rely on the venue clause to argue that jurisdiction is proper in Illinois. Accordingly, the court will assess whether there is personal jurisdiction over Voelkl in Illinois based on Voelkl's contacts with the state related to Scholle's tort claims.

### II. Minimum Contacts Analysis

The parties agree that Voelkl is not subject to Illinois's general jurisdiction but disagree on whether he is subject to specific jurisdiction here. (*See* Voelkl Reply at 9; Sur-Reply [72, 77] at 3 n.6.) Specific jurisdiction "refers to jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Brook*, 873 F.3d at 552. There are three requirements for specific jurisdiction. First, "the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012) (citation omitted). Second, the plaintiff's "alleged injury must have arisen from the defendant's forum-related activities." *Id.* Third, "the exercise of jurisdiction must comport with traditional notions of fair play and substantial

justice." *Id.*; *see also Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 878 (7th Cir. 2019). The inquiry thus focuses on "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quotation omitted).

While the defendant's physical presence in the forum state is not necessary, he must have sufficient contact with the forum state that he could "reasonably anticipate being haled into court there." *Brook*, 873 F.3d at 552 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). Courts emphasize that "[o]nly intentional contacts by the defendant with the forum jurisdiction can support specific jurisdiction." *Noboa v. Barcelo Corporacion Empresarial, SA,* 812 F.3d 571, 572 (7th Cir. 2016). The "mere fact that a defendant's conduct affects a plaintiff with connections to the forum State is not sufficient." *Brook*, 873 F.3d at 552. For this court to properly exercise jurisdiction over Voelkl, his contacts with Illinois must also be "suit-related." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014). That is, "there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1780 (2017) (quotation omitted); *see also Walden*, 571 U.S. at 284 ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum state."). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb*, 137 S. Ct at 1781.

**A. Voelkl's Suit-Related Contacts with Illinois**

The court begins by examining whether Voelkl's activities can be characterized as purposefully directed at Illinois, and whether Voelkl's forum-based activities are related to Scholle's claims. *See Curry*, 949 F.3d at 398. Scholle did not include allegations of personal jurisdiction over Voelkl in its third-party complaint. In its response brief and in an attached declaration from Dan Buhrfiend, however, Scholle describes several alleged contacts between Voelkl and the State of Illinois. Specifically, Scholle alleges that Voelkl signed an employee

confidentiality agreement with Scholle; made regular in-person visits to Scholle's headquarters in Illinois between 2010 and 2013; regularly communicated with Scholle employees in Illinois; reported to a supervisor in Illinois from 2012 to 2014; used Scholle's back office services in Illinois, including payroll processing and benefits administration; was paid from Scholle's Illinois bank account since at least 1997; submitted customer purchase orders to a Scholle department in Illinois; and accessed confidential information and emails stored on Scholle's servers in Illinois. On the whole, Scholle contends, the circumstances of Voelkl's employment were "virtually identical" to those of "all other employees working out of Scholle's offices in Northlake, Illinois." (Scholle Resp. at 2.)

Scholle asserts that its misappropriation of trade secrets claim arises out of Voelkl's contacts with Illinois because Voelkl allegedly improperly disclosed to Liqui-Box employees documents or information obtained from Scholle's Northlake, Illinois offices, and in a way that caused an injury felt in Illinois. (Sur-Reply at 3.) According to Scholle, Voelkl obtained the information or documents either on one of his trips to Illinois or by accessing Scholle's servers located in Illinois. (*Id.*; Scholle Resp. at 8, 11.) Traditionally with tort claims, courts assessing personal jurisdiction will determine whether the plaintiff has shown "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Conn*, 264 F. Supp. 3d. at 916 (quoting *Tamburo*, 601 F.3d at 703).

Scholle's allegations satisfy the first and third elements; Scholle claims that Voelkl intentionally disclosed Scholle's trade secrets to Liqui-Box, which caused an injury to Scholle in Illinois. But the Supreme Court in *Walden* emphasized that the personal jurisdiction inquiry must focus on the second element—the defendant's own conduct. The relation between the defendant and the forum "must arise out of contacts that the defendant *himself* created with the forum state." *Walden*, 571 U.S. at 284. Scholle's injury in Illinois is not enough for this court to exercise jurisdiction over Voelkl even if he knew Scholle was an Illinois company and could foresee that his conduct would harm Scholle there. *Advanced Tactical*, 751 F.3d at 802; *see also Walden,*

571 U.S. at 290 ("[M]ere injury to a forum resident is not a sufficient connection to the forum. . . . The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.").

The second element is, in this case, a close call. The parties do not dispute that Voelkl's alleged improper use and disclosure of the information constituting trade secrets occurred outside of Illinois. Voelkl was in Florida when he allegedly disclosed Scholle's trade secrets to Liqui-Box employees, none of whom received the information in Illinois. (Voelkl Reply at 6 n.3.) The primary issue, therefore, is whether the fact that Voelkl acquired the confidential information through his employment with an Illinois corporation is a sufficient contact for an Illinois court to exercise jurisdiction over Voelkl.

For several reasons, the court concludes that Scholle has made a sufficient prima face showing that personal jurisdiction over Voelkl is proper. *See Peeq Media, LLC v. Buccheri*, No. 16 CV 5292 (JPO), 2016 WL 5947295, at *3 (S.D.N.Y. Oct. 13, 2016); *Vizant Techs., LLC v. Whitchurch*, 97 F. Supp. 3d 618, 631 (E.D. Pa. 2015). During his employment with Scholle, Voelkl never maintained a physical office in Illinois—he worked in California and remotely from Florida—but he traveled to Illinois several times in connection with his employment between 2010 and 2013. (*See* Buhrfiend Decl. ¶ 4.) Scholle states that Voelkl made five trips to Illinois in 2011, eight trips in 2012, and eight trips in 2013. (*Id.*) Voelkl disputes the frequency of his travel to Illinois (Voelkl Decl. ¶ 11), and suggests that at least one of the trips cited by Scholle was, in fact, to Wisconsin. (Voelkl Reply at 2 n.2.) But at this stage of the proceedings, the court must resolve factual disputes in favor of Scholle. *Curry*, 949 F.3d at 393. Scholle also states that Voelkl's work required regular communication with employees and his direct supervisor in Illinois. The fact that Voelkl's direct supervisor between 2012 and 2014 worked out of Scholle's offices in Illinois (Buhrfiend Decl. ¶ 6), does not itself reflect purposeful contacts that Voelkl had with Illinois. It is not clear, for example, whether Kisselle was always in Illinois; it may be that he was Voelkl's direct supervisor for many years and decided for reasons unrelated to Voelkl to move to Scholle's Illinois office. Or Scholle may have unilaterally assigned Voelkl to work for Kisselle. Conversely, Voelkl

could have accepted a new position in 2012 that meant he would have to report to a supervisor in Illinois. But in any case, that Voelkl communicated with Kisselle in Illinois as part of his ordinary work duties establishes a connection between Voelkl's employment and the state of Illinois. The parties do not disclose whether sales Voelkl negotiated were for customers in Florida, Illinois, or elsewhere, but Voelkl submitted his sales orders to Scholle personnel in Illinois. (Scholle Resp. at 8, 10.)

Other contacts cited by Scholle are less significant: For example, Voelkl accessed confidential data stored on Scholle's servers located in Illinois and sent emails that were directed through those servers. (Buhrfiend Decl. ¶ 9.) But Scholle has not suggested that Voelkl knew these servers were located in Illinois. *See Conn*, 264 F. Supp. 3d at 921. While regularly accessing information stored on an employer's servers may provide a contact with the forum state, *see, e.g., Opus Fund Servs. (USA) LLC v. Theorem Fund Servs., LLC*, No. 17 C 923, 2017 WL 4340123, at *4 (N.D. Ill. Sept. 29, 2017), courts emphasize that personal jurisdiction may be based only on a defendant's purposeful contacts with the forum state. *Walden*, 571 U.S. at 286 (quotation omitted) ("[I]t is [ ] insufficient to rely on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff."). And server location cannot necessarily be inferred from a business's physical location. *NTE LLC v. Kenny Constr. Co.*, No. 14 C 9558, 2015 WL 6407532, at *4 (N.D. Ill. Oct. 21, 2015). Accordingly, most courts conclude that accessing a server constitutes a contact for purposes of personal jurisdiction only if the defendant knew the server was in the forum state. *See id.* (listing cases). Other courts reject the notion that server location can be considered "conduct that took place in the forum or was aimed at the forum by" the nonresident defendant at all unless, for example, the defendant had some influence over the location of the server. *See, e.g., Conn*, 264 F. Supp. 3d at 921–22 ("[T]he court rejects the conclusion that [defendant's] use of his work computer outside of Illinois constitutes conduct *in* Illinois simply because of the fortuity that [plaintiff's] network required routing through servers in Illinois."); *see also Tower Commc'ns Expert, LLC v. TSC Constr., LLC*, No. 18 C 2903, 2018 WL 5624268, at *10 (N.D. Ill. Oct. 30, 2018). Without, at the very least, evidence that Voelkl

knew Scholle's servers were located in Illinois, his remote use of email communications and data stored on those servers is not properly considered a purposeful contact with the state of Illinois.

Nor can the location of Scholle's bank account, or the location of Scholle's "back office" services be considered a purposeful contact between Voelkl and Illinois. *See Trinity Video Commc'ns, Inc. v. Carey*, No. 3:16-CV-00730-TBR, 2017 WL 1282247, at *3 (W.D. Ky. Apr. 4, 2017). Voelkl received direct deposit salary disbursements from Scholle's bank account in Illinois (Buhrfiend Decl. ¶¶ 7–8), but Scholle's banking choices are not the result of any purposeful activity by Voelkl. *See N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 489 (7th Cir. 2014) ("Of course, the checks [defendant] received from [plaintiff] were drawn on Illinois banks, but that does not show that [defendant] purposefully availed himself of the privilege of conducting business in Illinois."). Scholle notes, in addition, that its payroll processing, benefits administration, and similar functions have been performed out of Illinois since at least 1959. (Buhrfiend Decl. ¶ 7.) But the Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum state." *Curry*, 949 F.3d at 397. Scholle provides no evidence that the location of these services is anything more than a result of its own unilateral activities, for example, by suggesting that Voelkl contacted Scholle's Illinois office regarding payroll or benefits issues. *Cf. Numeric Analytics, LLC v. McCabe*, 161 F. Supp. 3d 348, 355 (E.D. Pa. 2016).

The dispute between Scholle and Voelkl concerns the alleged misappropriation of trade secrets and disclosure of confidential information obtained from within the forum-state. Many of the general circumstances of Voelkl's employment with Scholle, such as the location of Scholle's employees administering benefits or processing payroll, and the location of Scholle's servers, are not, without further explanation from Scholle, properly considered purposeful contacts with Illinois by Voelkl. Scholle does not specify when Voelkl obtained the trade secrets at issue here, which may mean that Voelkl learned the disputed information at a time when his role involved little or no interaction with this state. At this point, however, Scholle need only make a prima facie showing that personal jurisdiction over Voelkl is appropriate in Illinois. *Curry*, 949 F.3d at 401. Taken as

a whole, Scholle has demonstrated that Voelkl's remote employment was closely tied to Illinois and that he obtained the information at the heart of this dispute from his Illinois-based employment. *See Experian Info. Sols., Inc. v. I-Centrix LLC*, No. 04 C 4437, 2004 WL 2643459, at *3 (N.D. Ill. Nov. 19, 2004) (exercising personal jurisdiction over nonresident defendants who visited Illinois several times and communicated with individuals in Illinois during the course of a consulting agreement, when the plaintiff's trade secret misappropriation and breach of contract claims arose from the defendants' work under the agreement); *Zep, Inc. v. First Aid Corp.*, No. 09 C 1973, 2010 WL 1195094, at *6 (N.D. Ill. Mar. 19, 2010) (suggesting that personal jurisdiction in a trade secret misappropriation claim could stem from allegations that the defendant misappropriated information from the plaintiff's Illinois offices or related to its Illinois sales or client base). Scholle's allegations are sufficient at this stage for the court to exercise personal jurisdiction over Voelkl.

### B. Fair Play and Substantial Justice

Once the plaintiff makes "a threshold showing of minimum contacts," a defendant may defeat jurisdiction by presenting "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Curry*, 949 F.3d at 402 (quoting *Burger King*, 471 U.S. at 477)). That is, Voelkl must show that forcing him to litigate in Illinois offends traditional notions of "fair play and substantial justice." *Burger King*, 471 U.S. at 476. In making this determination, the court considers:

> [T]he burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of [the underlying dispute], and the shared interest of the several States in furthering fundamental substantive social policies.

*Curry*, 949 F.3d at 402 (alterations in original) (quoting *Purdue*, 338 F.3d at 781). Voelkl does not directly address these issues in his briefs, suggesting only that it would be "inequitable to force a former and now retired mid-level employee, who lives in Florida and never lived or worked in Illinois, to defend a lawsuit more than 1100 miles from his home." (Voelkl Reply at 13.) The court takes notice that in current practice, much litigation activity occurs remotely, even where all

litigants are physically present in the same location. The burden on Voelkl of litigating in Illinois does not by itself establish that jurisdiction in Illinois—where the underlying dispute between Liqui-Box and Scholle is being adjudicated, and where Scholle is a resident—is unreasonable. Accordingly, Voelkl has not met his burden to defeat jurisdiction. *See TEKSys., Inc. v. Modis, Inc.*, No. 08 C 5476, 2008 WL 5155667, at *4 (N.D. Ill. Dec. 5, 2008).

**C. The Fiduciary Shield Doctrine**

Voelkl also argues that he is not subject to personal jurisdiction in Illinois by function of the fiduciary shield doctrine—all of his contacts with the state were at the request of Scholle. In Illinois, the fiduciary shield doctrine "denies personal jurisdiction over an individual whose presence and activity in the state in which the suit was brought were solely on behalf of his employer or other principal." *Mission Measurement*, 287 F. Supp. 3d at 709 (quoting *Rice v. Nova Biomed. Corp.*, 38 F.3d 909, 912 (7th Cir. 1994)). The doctrine is a product of Illinois's long-arm statute and the Illinois constitution.[3] *Rollins*, 141 Ill. 2d at 270–71, 565 N.E.2d at 1314. The Supreme Court of Illinois explained that, when a defendant's "conduct in Illinois was a product of, and was motivated by, his employment situation and not his personal interests, . . . it would be unfair to use this conduct to assert personal jurisdiction over him as an individual." *Id.* at 280, 565 N.E.2d at 1318. Courts applying Illinois law have declined to apply the fiduciary shield doctrine in situations in which the nonresident employee acts "also or instead on his own behalf—to serve his personal interests," *Rice*, 38 F.3d at 912 (quotation omitted), or when the employee's acts were discretionary. *Leong v. SAP Am., Inc*, 901 F. Supp. 2d 1058, 1064 (N.D. Ill. 2012). "[W]hen considering Defendant's level of discretion, [a] [c]ourt does not consider those actions that caused the employer to enter the forum state, but rather the actions that allegedly gave rise to personal jurisdiction over the Defendant himself within that state." *Minemyer v. R-Boc Representatives, Inc.*, No. 07 C 1763, 2007 WL 2461666, at *6 (N.D. Ill. Aug. 24, 2007).

---

[3] Courts in this district have noted that the fiduciary shield doctrine "appears to be the only instance in which Illinois and federal due process may not be coextensive." *Hundt v. DirectSat USA, LLC*, No. 08 C 7238, 2010 WL 1996590, at *6 (N.D. Ill. May 17, 2010).

The fiduciary shield doctrine is an odd fit in this case. Ordinarily, it is raised in a situation where a non-resident defendant is sued individually by a third-party for acts in a state that he performed on behalf of his out-of-state employer, not in a situation, as here, where a non-resident defendant is sued by his own forum-based employer. In *Rollins*, for example, the Illinois Supreme Court applied the doctrine to shield from jurisdiction a Maryland police officer who had been sent into Illinois to serve an arrest warrant and was later sued in Illinois for false arrest based on this conduct. *See id.* at 249–50, 565 N.E.2d at 1304–05. The fiduciary shield doctrine is "not an absolute right; rather, it is an equitable and discretionary doctrine," *Levin v. Posen Found.*, 62 F. Supp. 3d 733, 741 (N.D. Ill. 2014), and the court declines to apply it in this case. Voelkl cites one case in which a court applied the fiduciary shield doctrine to deny personal jurisdiction over a nonresident employee of a forum corporation, *see Sys. Software Assocs. v. Trapp*, No. 95 C 3874, 1995 WL 506058 (N.D. Ill. Aug. 18, 1995), and the court was unable to find any other examples in its own research. *Trapp* thus appears to be an outlier.

The court is more persuaded by cases declining to apply the fiduciary shield doctrine in similar circumstances based on the rationale that a nonresident employee of a forum corporation personally benefits from his contacts with the forum. In *Clark Products, Inc. v. Rymal*, for example, the court declined to apply the fiduciary shield doctrine to an employee of an Illinois corporation's Michigan branch office who diverted a potential customer from her employer to a new business she started with a colleague. No. 02 C 6893, 2002 WL 31572569, at *3 (N.D. Ill. Nov. 19, 2002). The court found that it would be inequitable to apply the shield under the circumstances because the employee personally benefitted by retaining her employment with the plaintiff while earning additional income from the competing business. *Id.* Additionally, her failure to disclose the opportunity to her employer was discretionary. *Id.* In *Maverick Technologies v. Shelton*, the court similarly declined to apply the fiduciary shield doctrine to a nonresident employee of a forum corporation, explaining that the defendant "maintained sufficient minimum contacts with the state of Illinois such that it was foreseeable that he might one day be haled into Illinois court based on the nature and quality of his employment relationship with [plaintiff]." No. CIV. 07-297-WDS, 2008

WL 631194, at *5 (S.D. Ill. Mar. 5, 2008). The court continued: "[defendant] sought employment with [plaintiff] out of the firm's Illinois office, ultimately himself becoming a shareholder of the firm and enjoying the personal benefits of that relationship." *Id.*

Since the Illinois Supreme Court formally adopted the fiduciary shield doctrine, courts within this Circuit have emphasized the *Rollins* Court's underlying holding that "[j]urisdiction is to be asserted only when it is fair, just, and reasonable to require a non-resident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Brujis v. Shaw*, 876 F. Supp. 975, 979 (N.D. Ill. 1995) (quoting *Rollins*, 141 Ill. 2d at 275, 565 N.E.2d at 1316). Voelkl is subject to personal jurisdiction in this case based on numerous contacts with Illinois resulting from his ongoing employment relationship with an Illinois corporation. When an individual maintains employment with a forum corporation, the element of coercion present in *Rollins* is absent because the employee has voluntarily targeted the forum state by accepting and maintaining employment. *See Rollins*, 141 Ill. 2d at 280, 565 N.E.2d at 1318; *see also Levin*, 62 F. Supp. 3d at 741 ("[T]he Illinois Supreme Court suggested that [it is] the element of compulsion involved in an employee's contacts with Illinois [that] ma[kes] it unfair to assert jurisdiction over him.") (quotation omitted); *Carter v. Siemens Bus. Servs., LLC*, No. 10 C 1000, 2010 WL 3522949, at *7 (N.D. Ill. Sept. 2, 2010) ("The fiduciary shield doctrine is meant to protect employees who have little or no alternative beside unemployment when they entered another State to carry out the wishes of their employer.") (quotation and alterations omitted). Voelkl was not a high-level Scholle employee, as in *Rymal* and *Shelton*, but Voelkl personally benefitted by maintaining a long-term employment relationship with an Illinois company. The exercise of personal jurisdiction in this case is therefore based on Voelkl's own contacts with the forum state, not those of his employer, and the interests of fairness, justice, and reasonableness implicated by the fiduciary shield doctrine are protected. The court finds that equity does not warrant application of the fiduciary shield doctrine to prevent the exercise of jurisdiction over Voelkl.

**CONCLUSION**

Lawrence Voelkl maintained a long-term employment relationship with Scholle that, according to Scholle's factual assertions, was centered in the state of Illinois. Scholle's misappropriation of trade secrets and breach of contract claims arise out of Voelkl's employment-related contacts with Illinois. Accordingly, Scholle has made a prima facie case that this court may properly exercise personal jurisdiction over Voelkl. Voelkl's motion to dismiss [51] for lack of personal jurisdiction is denied.

ENTER:

Dated: September 18, 2020

REBECCA R. PALLMEYER
United States District Judge